DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Hedy Lynn Moss, appeals from her conviction in the Summit County Court of Common Pleas. We affirm.
 I {¶ 2} Around midnight on May, 24, 2007, Moss and Tausha Turner flagged down Detective Jason Malick and Detective Michael Gilbride while the officers were patrolling the *Page 2 
Akron area of Copley Road and Wildwood Avenue in an unmarked car. The officers were attempting to buy cocaine as part of their responsibilities as members of the Akron Police Department's Street Narcotics Undercover Division ("SNUD"). The area was known for drug activity.
 {¶ 3} After the officers stopped their car, Moss and Turner came up to the passenger side window and asked them what they needed. The officers responded that they "were looking to get high." The women asked to get into the car, but the officers refused for safety reasons. Turner asked the officers how much they wanted, and they answered that they wanted two $20 pieces. Moss told the officers to pull up further south on Wildwood.
 {¶ 4} Then Moss and Turner walked into separate houses. When they came out of the houses, they met for a few seconds before returning to the officers' car. Turner handed Detective Malick two rocks of crack cocaine and he paid her $40. Moss was standing next to Turner when the exchange took place. The two rocks of crack cocaine weighed a total of 0.45 grams. Shortly after the exchange, a team of officers arrested Moss and Turner.
 {¶ 5} Moss was indicted for trafficking in cocaine in violation of R.C. 2925.03(A)(1) and for possession of marijuana in violation of R.C. 2925.11(A). Moss pled not guilty. Turner pled guilty to a trafficking in cocaine charge and is not a party to this appeal.
 {¶ 6} On December 19, 2007, a jury found Moss guilty of trafficking in cocaine, and the trial court found her guilty of possession of marijuana. Moss received an eleven month prison sentence.
 {¶ 7} Moss appeals her conviction, raising five assignments of error for our review. We consolidate several of the assignments of error for analysis purposes.
 II *Page 3 Assignment of Error Number One "DEFENDANT'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE AND/OR WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 Assignment of Error Number Two "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT'S RULE 29 MOTION[.]"
 {¶ 8} In her first assignment of error, Moss contends that the trial court erred because her conviction was based on insufficient evidence, or in the alternative, was against the manifest weight of the evidence. Similarly, in her second assignment of error, Moss argues that because there was insufficient evidence to sustain her conviction, the court erred in failing to grant her Crim. R. 29(A) motion for a judgment of acquittal. We disagree.
 {¶ 9} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
 {¶ 10} In State v. Roberts, this Court explained: *Page 4 
 "[S]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Accordingly, we address Moss' challenge to the weight of the evidence first, as it is dispositive of her claim of sufficiency.
 {¶ 11} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 12} After reviewing the record, we cannot conclude that the jury lost its way or created a manifest miscarriage of justice.
 {¶ 13} Moss argues that the evidence fails to show that she either sold drugs or offered to sell drugs. Moss indicates that the sales transaction took place solely between Turner and Detective Malick. Moss contends that she did not return to the car with drugs. Moss claims to have just stood there during the exchange, saying nothing. Also, she notes that Detective Malick *Page 5 
conceded in his testimony that when the women initially asked "what are you looking for," they could have been referring to prostitution. In addition, she argues that when Detective Malick responded that the officers were "looking to get high," it could have meant they were looking for sex. Finally, Moss contends that that she did not "knowingly" sell drugs within the statutory meaning of the word.
 {¶ 14} R.C. 2925.03(A)(1) provides that no person shall knowingly "[s]ell or offer to sell a controlled substance." R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 3719.01(AA) defines "sale" to include "delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee."
 {¶ 15} The Ohio Supreme Court has ruled that "[a] person can `offer to sell a controlled substance' in violation of R.C. 2925.03(A)(1) without transferring a controlled substance to the buyer." State v. Scott
(1982), 69 Ohio St.2d 439, syllabus. Further, a defendant who acts as a "link in the chain of supply" in an illegal drug sale is guilty of "offering to sell" in violation of R.C. 2925.03. Id. at 441. "In `link in the chain of supply' situations surrounding the sale of drugs, all links in the chain of supply are equally culpable." State v. Jones (Jan. 12, 2000), 9th Dist. No. 98CA007057 at *5, citing State v. Latina
(1984), 13 Ohio App.3d 182, 187.
 {¶ 16} Both police officers testified on behalf of the State. Detective Malick indicated that both women flagged the officers down and asked them what they wanted. The incident occurred in a high drug area around midnight. When Detective Malick responded that he wanted to get high, Turner asked the officers how much they wanted. Moss was standing next to Turner *Page 6 
when she asked this question. When Detective Malick answered that they wanted two $20 pieces, it was Moss who asked them to pull their car further up the street. Then the two women went into separate houses. The house Moss entered was later subject to an investigation where police made controlled drug buys. Detective Malick testified that when the women came out of the respective houses, they met for a few seconds "real tight with each other." When the women returned to the car, Turner handed Detective Malick the cocaine through the passenger window, and he gave her $40. Moss was standing next to Turner when the sale took place. The officers then pulled away while another team of officers came and arrested the women.
 {¶ 17} Detective Gilbride's testimony essentially corroborated Detective Malick's testimony. Moss did not testify at trial and no other witnesses testified on her behalf.
 {¶ 18} The evidence shows that Moss and Turner acted in concert from start to finish. First, they flagged the officers' car down together. Although Moss argues that the officers' initial response could have been construed as a request for sex, there is no question that as the incident progressed, the officers were asking to buy crack cocaine and that Moss was an active participant. After Detective Malick said the officers were looking for two $20 pieces, it was Moss who asked them to pull further up the street. At this point, because Moss was aware that the circumstances involved the sale of crack cocaine, there is no question that she was acting "knowingly" within the meaning of the statute.
 {¶ 19} After knowing of the officers' desire to make the purchase, Moss and Turner went into separate houses, met together after they left the houses, and returned to the officers' car together with the crack cocaine. Although it was Turner who actually made the transfer to Detective Malick, Moss was by her side. A person can be found guilty of offering to sell a controlled substance without actually transferring the substance to the buyer. Scott, supra. See, *Page 7 
also, State v. Townsend, 9th Dist. No. 23397, 2007-Ohio-4421 (finding that the jury could reasonably infer that the appellant offered to sell crack cocaine due to the fact that he approached the detective's car, asked the detective what he wanted, and asked the detective to wait, thereby implying he intended to satisfy the detective's request.)
 {¶ 20} Further, because both Moss and Turner went into separate houses and then met on the street before returning to the officers' car, it is reasonable to infer that Moss was a link in the chain of supply and, as such, was equally culpable with Turner for the illegal sale.Jones, supra.
 {¶ 21} Moss flagged down the officers' car, asked the officers what they wanted, asked them to pull further up the street, and, while they were waiting, went into a house implying that she intended to satisfy their request. The weight of the evidence points to Moss' guilt, and the jury did not lose its way.
 {¶ 22} Having disposed of Moss' challenge to the weight of the evidence, we similarly dispose of her sufficiency challenge. SeeRoberts, supra, at *2. The trial court did not err by failing to find that there was insufficient evidence to convict Moss or that Moss' conviction was against the manifest weight of the evidence. As such, Moss' first assignment of error is overruled.
 {¶ 23} Having determined that there was sufficient evidence to convict Moss, we may now dispose of her second assignment of error. Crim. R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Because we find that there was sufficient evidence to convict her, the trial court did not err in denying Moss' Crim. R. 29(A) motion. Therefore, Moss' second assignment of error is overruled.
 Assignment of Error Number Three *Page 8 "THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY ON ATTEMPT[.]"
 Assignment of Error Number Four "THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY ON ENTRAPMENT[.]"
 {¶ 24} In her third and fourth assignments of error, Moss contends that the trial court erred in failing to provide instructions to the jury on attempt and entrapment. We disagree.
 {¶ 25} When reviewing a trial court's jury instructions, this Court reviews the record to determine whether the trial court's decision to give or decline to give a requested jury instruction constitutes an abuse of discretion under the facts and circumstances of the case.State v. Wolons (1989), 44 Ohio St.3d 64, 68. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this court may not substitute its judgment for that of the trial court. Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 26} In her third assignment of error, Moss claims that the court erred in not instructing the jury on attempted drug trafficking. "Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus.
 {¶ 27} In this case, there was evidence that Moss offered to sell crack cocaine to the police officers. The act of offering to sell crack cocaine is sufficient to support a conviction for drug trafficking pursuant to R.C. 2925.03(A)(1). Scott, supra. Thus, the evidence produced at *Page 9 
trial did not reasonably support acquittal on the drug trafficking charge. As such, the trial court did not err in failing to instruct the jury on the lesser included offense of attempted drug trafficking. Moss' third assignment of error is overruled.
 {¶ 28} In her fourth assignment of error, Moss claims that the trial court erred in not instructing the jury on entrapment. "The defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." State v. Doran (1983),5 Ohio St.3d 187, paragraph one of the syllabus.
 {¶ 29} A jury instruction on entrapment would not have been appropriate in this case. Moss claims that she did not actively participate in the drug transaction. This is not consistent with the defense of entrapment because entrapment presupposes active participation in the transaction at the instigation of governmental officials. Doran, supra. Therefore, the trial court did not err in failing to include an instruction on entrapment. Accordingly, Moss' fourth assignment of error is overruled.
 Assignment of Error Number Five "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT'S MOTION FOR MISTRIAL BASED UPON THE PROSECUTOR'S IMPROPER ARGUMENT DURING CLOSING ARGUMENT[.]"
 {¶ 30} In her fifth assignment of error, Moss contends that the trial court erred in failing to grant her motion for mistrial based on inaccurate statements made by the prosecutor during her closing argument. We disagree.
 {¶ 31} "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v.Smith (1984), 14 Ohio St.3d 13, 14. The prosecutor's conduct is not a *Page 10 
ground for error unless it deprives the defendant of a fair trial.State v. Maurer (1984), 15 Ohio St.3d 239, 266. It is Moss' burden to show that "but for the prosecutor's misconduct, the result of the proceeding would have been different." State v. Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 47.
 {¶ 32} During closing argument, the prosecutor remarked:
 "I think it was Detective or Sergeant Malick who indicated to you that [Moss and Turner] raced to the car. `You want drugs? All right. Pull around the corner, park the car.'"
Improper remarks will not result in prejudice to Moss if it is clear beyond a reasonable doubt that, absent the remarks, the jury would have found Moss guilty. State v. Davidson (June 20, 1990), 9th Dist. No. 89CA004641, at *2, citing Smith, 14 Ohio St.3d at 15. We have reviewed the record and find that the jury would have reached the same verdict even without the prosecutor's remarks.
 {¶ 33} As we noted in our findings with respect to Moss' first two assignments of error, the weight of the evidence favored Moss' conviction. Therefore, we cannot conclude that, but for the prosecutor's statement, the outcome of the trial would have been different. Also, when the prosecutor made the contested comment, Moss' counsel objected. The court overruled the objection and cautioned the jurors that remarks made by the prosecutor were not evidence. Further, the contested statement would have been made in response to the officers' request for crack cocaine. At this point, the evidence showed that by asking the officers to pull their car forward, Moss was a willing participant in the drug sale whether or not she actually made any statement soliciting the sale of drugs at the time. Moss' words and actions throughout the incident were more than adequate to support her conviction. The prosecutor's comment was an isolated incident in the argument. Judging the prosecutor's remarks in the context of the whole *Page 11 
case, we cannot conclude that Moss' rights were prejudicially affected or that she was denied a fair trial. Moss' fifth assignment of error, therefore, is overruled.
 III {¶ 34} Moss' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 SLABY, J. CARR, P. J. CONCUR *Page 1