[Cite as *State v. Rodrigues*, 2012-Ohio-535.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

DECIO RODRIGUES, JR.

    Appellant

C.A. No.     11CA009971

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    08CR075312

DECISION AND JOURNAL ENTRY

Dated: February 13, 2012

---

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Decio Rodrigues, Jr., appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms in part and reverses in part.

I

{¶2} On the morning of January 25, 2008, the owner of Gonzalez Market, Jose Gonzalez, sustained three gunshot wounds during a robbery and died as a result of his injuries. Marcus Crawley, an employee of Allied Waste who habitually stopped at Gonzalez Market on his weekly route, witnessed a man run from the store with a handful of money. The man ran down the street, turned once to look at Crawley, and disappeared behind several houses. Crawley then entered the store and noted both that the store appeared empty and the cash register was displaying three zeros. After briefly leaving the store to call his supervisor and report what he had seen, Crawley reentered Gonzalez Market and discovered Gonzalez lying behind the counter. Crawley later identified Rodrigues as the man he saw fleeing from the store.

{¶3} The police learned that Gonzalez had kept a Taurus .38 caliber revolver under the counter of his store to protect himself and his wife in the event of a robbery. The police found the revolver on the counter of the store after Gonzalez' murder, along with a car jack handle. The revolver contained five spent casings, and the store's safe was empty. The police later gained information that Rodrigues had perpetrated the crimes at Gonzalez Market.

{¶4} Rodrigues led the police to a false address after an officer spoke with him on the phone and asked where he lived. When officers finally located Rodrigues and attempted to arrest him, he fled and a short chase ensued. Rodrigues had $1,210 in cash in his pocket at the time of his arrest. During his interview at the police station, Rodrigues refused to admit that he was involved in the shooting. Several members of Rodrigues' family, however, informed the police that Rodrigues had confessed to them that he shot Gonzalez in the midst of a struggle when he robbed Gonzalez Market. Rodrigues also could not be eliminated as the source of the DNA that was extracted from Gonzalez' fingernail scraping.

{¶5} A grand jury indicted Rodrigues on the following counts: (1) aggravated murder, in violation of R.C. 2903.01(B); (2) two counts of murder, in violation of R.C. 2903.02(A) and 2903.02(B); (3) two counts of aggravated robbery, in violation of R.C. 2911.01(A)(1) and 2911.01(A)(3); (4) felonious assault, in violation of R.C. 2903.11(A)(1); (5) having weapons under disability, in violation of R.C. 2923.13(A)(2); and (6) theft, in violation of R.C. 2913.02(A)(1). The indictment also contained a capital murder specification and multiple gun specifications. On June 27, 2008, a supplemental indictment charged Rodrigues with an additional count of aggravated robbery, in violation of R.C. 2911.01(A)(3), felony murder, in violation of R.C. 2903.02(B), and two attendant gun specifications. Rodrigues waived his right to a jury trial and, due to the capital specification, had a bench trial before a three-judge panel.

**{¶6}** The three-judge panel found Rodrigues guilty of felony murder, two counts of aggravated robbery, felonious assault, theft, and having weapons while under disability. Rodrigues appealed from his sentence, but this Court dismissed the appeal by way of journal entry because the sentencing entry failed to order a specific amount of restitution. *State v. Rodrigues*, 9th Dist. No. 10CA009868 (Aug. 25, 2010). Subsequently, a single judge issued a journal entry vacating the restitution portion of Rodrigues' sentence. Rodrigues appealed again, but this Court dismissed the second appeal by journal entry, concluding that the trial court had still yet to issue a final judgment of conviction. *State v. Rodrigues*, 9th Dist. No. 10CA009941 (Dec. 30, 2010).

**{¶7}** On February 15, 2011, the three-judge panel issued a final sentencing entry. Rodrigues now appeals from his convictions and raises three assignments of error for our review.

II

Assignment of Error Number One

THE VERDICTS ARE AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF MR. RODRIGUES'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

**{¶8}** In his first assignment of error, Rodrigues argues that his felony murder conviction is based on insufficient evidence. Specifically, he argues that the State failed to prove proximate cause. We disagree.

**{¶9}** In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 274 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to

determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins*, 78 Ohio St.3d at 386.

{¶10} The felony murder statute provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." R.C. 2903.02(B).

[D]eath is the "proximate result" of [a] [d]efendant's conduct in committing the underlying felony offense * * * [if it is] a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience.

*State v. Chapman*, 190 Ohio App.3d 528, 2010-Ohio-5924, ¶ 24 (9th Dist.), quoting *State v. Dixon*, 2d Dist. No. 18582, 2002 WL 191582, *5 (Feb. 8, 2002). "[T]he predicate offense contains the mens rea element for felony murder." *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 43. Both felonious assault and aggravated robbery are offenses of violence for purposes of the felony murder statute. R.C. 2901.01(A)(9)(a).

{¶11} Rodrigues' sole argument is that the State failed to prove proximate cause. Specifically, he argues that Gonzalez' death was not a foreseeable consequence of the aggravated robbery he committed. We disagree.

{¶12} Lilliam Gonzalez, the victim's wife, testified that her husband kept a revolver behind the counter at their store for protection and was worried because multiple robberies had taken place recently in the neighborhood. She testified that she and her husband kept a large amount of cash in the store on Fridays because that was the day the store cashed the most checks

for its customers. On the morning of her husband's murder, Lilliam left the store to go to the bank and run a few errands. She did not return until after the shooting occurred.

{¶13} Jermaine Hernandez, Rodrigues' younger brother, testified that he spoke with Rodrigues three days before the shooting. During their conversation, Rodrigues stated that he would buy his daughters everything they needed if he ever got a "good lick." Hernandez understood a "good lick" to refer to a robbery. He further testified that Rodrigues specifically discussed Gonzalez Market as an ideal location for a robbery because he knew Lilliam Gonzalez left the store and went to the bank on Fridays. The day of the murder, Rodrigues called Hernandez and told him that he had robbed Gonzalez Market, but the robbery had gone awry. Rodrigues told his brother that Gonzalez scratched his face and pulled out a gun. Rodrigues then said that the two struggled over the gun and it went off three times.

{¶14} Jennifer Lopez, Rodrigues' sister, also testified that Rodrigues confessed to her after the shooting. Rodrigues told his sister that he "tussle[d]" with Gonzalez and that Gonzalez had a gun. Lopez testified that Rodrigues framed the shooting as an act of self-defense and that he shot Gonzalez because "he felt like it was his life or Mr. Gonzalez's * * *." According to Dr. Paul Matus, the Lorain County Coroner, Gonzalez died as a result of three gunshot wounds to his trunk, one of which was fired from approximately six to seven inches away from his body and two of which were fired from approximately one inch or less away.

{¶15} Sergeant Mark McCoy of the Lorain Police Department testified that the police found a two-foot car jack handle behind the counter at Gonzalez Market after the shooting. Michael Thompson, Lopez' boyfriend, identified the car jack handle as one that he had kept on his back porch, covered by a tarp. Both Thompson and Lopez testified that Rodrigues lived with them at the time of the shooting. Thompson testified that he did not realize the car jack handle

was missing until the police came to the house and asked him whether he kept any car jacks at the house.

**{¶16}** Rodrigues claims that the State failed to prove felony murder because it was not foreseeable that Gonzalez would "escalate a threat of violence with a blunt object into active violence with a firearm." He argues that he merely confronted Gonzalez with a car jack handle and could not foresee that Gonzalez would respond by brandishing a firearm. There is no evidence in the record, however, that Rodrigues merely confronted Gonzalez with the jack handle. The only evidence as to what occurred in the store was that the two men engaged in a struggle, during which Gonzalez scratched Rodrigues, and Rodrigues shot Gonzalez three times at close range.

**{¶17}** Rodrigues specifically discussed robbing Gonzalez Market on a Friday and had at least some knowledge about the habits of the owners, given that he knew Lilliam Gonzalez went to the bank on Fridays. Rodrigues brought a large, blunt instrument with him to the store, which was located in a neighborhood that had experienced multiple robberies. Under these circumstances, it was reasonably foreseeable that the situation might escalate beyond just robbery. A rational trier of fact could have concluded, based on the evidence set forth by the State, that Rodrigues proximately caused Gonzalez' death in the commission of both felonious assault and aggravated robbery. Consequently, Rodrigues' first assignment of error is overruled.

Assignment of Error Number Two

> THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF MR. RODRIGUES'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

**{¶18}** In his second assignment of error, Rodrigues argues that his felony murder conviction is against the manifest weight of the evidence. We disagree.

**{¶19}** In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten*, 33 Ohio App.3d at 340.

**{¶20}** Rodrigues argues that the trier of fact lost its way by not concluding that the shooting here was accidental and the "only alternative" Rodrigues had in a "life-or-death situation." Initially, we note that Rodrigues is incorrect in asserting any argument resembling self-defense as he was at fault for creating the situation giving rise to the murder. *State v. Little*, 9th Dist. No. 10CA009758, 2011-Ohio-768, ¶ 23, quoting *State v. Gates*, 9th Dist. No. 24941, 2010-Ohio-2994, ¶ 7. Further, it is irrelevant that Rodrigues did not intend to kill Gonzalez. The felony murder statute only requires the intent to commit the underlying predicate offense in conjunction with the death of the victim, proximately caused by the commission or attempted

commission of the predicate offense. R.C. 2903.02(B); *Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, at ¶ 43. The trier of fact here concluded that Rodrigues intended to commit aggravated robbery and felonious assault and, in committing those offenses, proximately caused the death of Gonzalez. Based on the evidence in the record, we cannot say that the trier of fact lost its way in reaching that determination. Rodrigues' second assignment of error is overruled.

Assignment of Error Number Three

> THE TRIAL COURT ERRED IN IMPOSING SENTENCES FOR ALLIED OFFENSES OF SIMILAR IMPORT.

{¶21} In his third assignment of error, Rodrigues argues that the trial court committed plain error by sentencing him on allied offenses of similar import.

{¶22} The trial court here determined that several of Rodrigues' offenses were allied offenses, but still sentenced him on aggravated robbery, the firearm specification underlying that charge, having weapons while under disability, and felony murder.

> In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, the Ohio Supreme Court held that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.* at syllabus. Since then, this Court has consistently remanded cases for further proceedings in the trial court to apply *Johnson* for the first time. *See, e.g., State v. Creel*, 9th Dist. No. 25476, 2011-Ohio-5893, ¶ 4.

*State v. Daniels*, 9th Dist. No. 25808, 2011-Ohio-6414, ¶ 12. The trial court did not have the opportunity to consider *Johnson* in determining whether the counts here are allied offenses. Further, if any of the offenses here are allied, the State has not yet "had the opportunity to elect on which offense it wishes to proceed for sentencing." *Creel* at ¶ 4. Consistent with our precedent, we must remand the matter to the trial court for it to apply *Johnson* in the first instance. *Id.* Rodrigues' third assignment of error is sustained on this basis.

III

**{¶23}** Rodrigues' first and second assignments of error are overruled. His third assignment of error is sustained for the reason set forth above. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and remanded to the trial court for consideration of the allied offense issue in light of *Johnson*.

Judgment affirmed in part,<br>
reversed in part,<br>
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

CARR, J.
DICKINSON, J.
CONCUR

APPEARANCES:

PAUL GRIFFIN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BILLIE JO BELCHER, Assistant Prosecuting Attorney, for Appellee.