[Cite as *In re M.D.*, 2016-Ohio-5393.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: M.D.

C.A. No.     28087

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DL 15-04-0908

DECISION AND JOURNAL ENTRY

Dated: August 17, 2016

HENSAL, Judge.

{¶1}     M.D. appeals a judgment entry of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her delinquent of involuntary manslaughter, corrupting another with drugs, and trafficking in heroin.  For the following reasons, this Court affirms.

I.

{¶2}     The facts of this case are largely undisputed.  On the morning of January 13, 2015, Brandy Amaro sent a text message to M.D., her cousin, asking for help finding heroin. After agreeing to help her, M.D. sent a text message to Brandon Barton.  Although Mr. Barton did not have any heroin, he got in touch with his friend Tydon Beaver, who knew someone who would sell it to Ms. Amaro.  Through a series of messages passed along that communication chain, Ms. Amaro arranged to buy $40.00 of heroin from Mr. Beaver's contact.

{¶3}     Around 6:00 p.m. that same day, Mr. Barton picked M.D. and Ms. Amaro up in his car.  Mr. Barton was in the driver's seat, Mr. Beaver was in the front passenger seat, Ms.

Amaro was in the backseat behind Mr. Barton, and M.D. was behind Mr. Beaver. They drove to the arranged meeting location and waited for Mr. Beaver's contact. A couple of minutes after they arrived, the contact knocked on the front passenger window of the car. After Mr. Beaver rolled down his window, Mr. Barton felt Ms. Amaro lean over his seat to make the transaction. When it was over, Mr. Barton drove everyone to his house. Ms. Amaro went upstairs and sometime thereafter yelled for M.D.'s help. After M.D. and Ms. Amaro came downstairs, Mr. Barton went upstairs. In the bathroom, he saw a spoon out on a shelf that did not belong to his family, which indicated to him that Ms. Amaro had used or had attempted to use the heroin at his house. When Mr. Beaver learned about the spoon, he got upset at Ms. Amaro. Mr. Barton ended up taking everyone home about 15 minutes later. According to Mr. Barton, he dropped Ms. Amaro off at her home around 8:00 p.m. at the latest.

{¶4} The house where Ms. Amaro lived belonged to Ms. Amaro's cousin, Amy. D. Ms. D.'s son saw Ms. Amaro arrive home and go up to her room, explaining that she had taken Xanax. Around 5:00 a.m. the next morning, Ms. D. was awake adjusting the temperature of the house when she noticed that the television in Ms. Amaro's room was still on. She knocked on the door, but received no answer. After going downstairs to adjust the heat and pour herself some juice, Ms. D. returned upstairs and knocked on Ms. Amaro's door again. When there no answer, Ms. D. unlocked the door and opened it, discovering that Ms. Amaro had died. An autopsy revealed that Ms. Amaro died from recent heroin use.

{¶5} Following an investigation into Ms. Amaro's death, Detective Timothy Harvey filed three complaints against M.D., alleging that she was delinquent because she had committed acts that would constitute involuntary manslaughter, trafficking in heroin, and corrupting another with drugs if committed by an adult. Before trial, the State amended two of the complaints to

allege that M.D. was complicit in acts that constituted involuntary manslaughter and trafficking in heroin. Following trial, the juvenile court adjudicated M.D. to be a delinquent child and committed her to the Ohio Department of Youth Services for a minimum of one year. M.D. has appealed, assigning four errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING THE JUVENILE DELINQUENT OF INVOLUNTARY MANSLAUGHTER BY MEANS OF "TRAFFICKING IN HEROIN" BECAUSE SUCH CHARGE IS A LEGAL FICTION.

{¶6} M.D. argues that she could not have committed complicity to commit trafficking in heroin because she was only helping her cousin buy the drug. She notes that the legislature did not include the buyer of a drug as someone who commits trafficking. She, therefore, argues that, because she was simply her cousin's assistant, she could not be complicit with the seller.

{¶7} The trafficking statute, Ohio Revised Code Section 2925.03(A)(1), provides that no person shall knowingly sell or offer to sell a controlled substance. The complicity statute, Section 2923.03(A)(2), provides that no person shall aid or abet another in committing an offense. Regarding the trafficking of drugs, the Ohio Supreme Court has held that anyone who acts as a "link in the chain of supply" is guilty of "offering to sell" the drug under Section 2925.03(A)(1). *State v. Moss*, 9th Dist. Summit No. 24092, 2008-Ohio-3956, ¶ 15, citing *State v. Scott*, 69 Ohio St.2d 439, 441 (1982). Because each link of the chain is equally culpable, there is no "agent of the purchaser" defense in Ohio. *State v. Latina*, 13 Ohio App.3d 182, 187 (8th Dist.1984). For example, in *State v. Osborne*, 9th Dist. Medina No. 3008-M, 2000 WL 1226619 (Aug. 30, 2000), a paid confidential informant called Jonathan Osborne and asked to buy marijuana from him. Although Mr. Osborne told the informant that he did not buy or smoke

marijuana, he said he would try to obtain a bag for her. When they next spoke, Mr. Osborne told the informant that she could buy marijuana from a different individual, which she did. This Court upheld Mr. Osborne's conviction for trafficking, explaining that, under *Scott*, he had aided and abetted the seller even though he was not present at the sale and was only a middleman. *Id*. at *3-4.

{¶8} It was solely through M.D.'s assistance that Ms. Amaro was able to obtain heroin from Mr. Beaver's contact. Although she was merely one link in the communications between Ms. Amaro and the seller and sat still during the actual transaction, we conclude that M.D. aided and abetted the seller under Section 2923.03(A)(2). *See id*. M.D.'s first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ADJUDICATING THE JUVENILE DELINQUENT OF TRAFFICKING IN HEROIN AND INVOLUNTARY MANSLAUGHTER BECAUSE THE STATE'S EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR COMPLICITY TO COMMIT TRAFFICKING IN HEROIN.

{¶9} M.D. next argues that the State did not present sufficient evidence for the court to find that she committed trafficking in heroin and involuntary manslaughter. She argues that there was no evidence that she acted with the same mental state as the seller, noting that it was undisputed that she did not even know the identity of the seller. She also argues that there was no evidence that Mr. Beaver's contact sold heroin to Ms. Amaro, noting that Mr. Barton testified that he was focused on his cell phone and not really paying attention during the alleged drug deal.

**{¶10}** Whether an adjudication is supported by sufficient evidence is a question of law, which we review de novo. *See State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶11}** To be complicit in an offense, the defendant must have acted "with the kind of culpability required for the commission of [the] offense[.]" R.C. 2923.03(A). To establish that a person committed trafficking, Section 2925.03 requires the State to prove that the accused "knowingly" sold or offered to sell drugs. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶12}** The text messages that M.D. exchanged with Ms. Amaro and Mr. Barton establish that she knowingly helped Mr. Beaver's contact arrange to sell heroin to her cousin. When Ms. Amaro told M.D. that she needed $40.00 of heroin, M.D. checked with Mr. Barton and then told Ms. Amaro that "my dude can get it[.]" She also rode with Mr. Barton so that she could tell him where to go to pick up Ms. Amaro. Regarding whether a sale actually occurred, even though Mr. Barton did not see heroin pass between Ms. Amaro and the contact in exchange for money, viewing the evidence in a light most favorable to the prosecution, we conclude that there was sufficient circumstantial evidence to establish that a drug transaction occurred. *See Jenks*, 61

Ohio St.3d, at 272 ("Circumstantial evidence and direct evidence inherently possess the same probative value."). Mr. Barton testified that Ms. Amaro must have gotten heroin from the transaction because she had some with her when they returned to his house. M.D. also sent Ms. Amaro a text message after they all returned home, telling Ms. Amaro that she "forgot to gimme tht pointtt[,]" which Detective Harvey said meant 0.1 grams or a needle of heroin, evidencing, if nothing else, that Ms. Amaro had possession of some heroin later in the day, where earlier in the day she did not. M.D.'s second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN ADJUDICATING THE JUVENILE DELINQUENT OF INVOLUNTARY MANSLAUGHTER BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION BECAUSE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT BRANDY AMARO'S DEATH WAS THE PROXIMATE RESULT OF ANY DRUG ACTIVITY INVOLVING THE JUVENILE.

{¶13} M.D. also argues that there was insufficient evidence to adjudicate her delinquent of involuntary manslaughter because there was no evidence that established that it was heroin Ms. Amaro bought from Mr. Beaver's contact that resulted in her death. Initially, she repeats her argument that the State failed to prove that a heroin transaction occurred. She also argues that, because the sale occurred approximately 12 hours before Ms. Amaro's death, which was also 10 hours since M.D. last saw Ms. Amaro, it is speculative that the alleged sale proximately caused Ms. Amaro's death.

{¶14} The involuntary manslaughter statute, Section 2903.04(A), provides that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." "[D]eath is the 'proximate result' of [a] [d]efendant's conduct in committing the underlying felony offense * * * [if it is] a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when

viewed in the light of ordinary experience." (Alterations original.) *State v. Rodrigues*, 9th Dist. Lorain No. 11CA009971, 2012-Ohio-535, ¶ 10, quoting *State v. Chapman*, 190 Ohio App.3d 528, 2010-Ohio-5924, ¶ 24 (9th Dist.).

{¶15} Mr. Barton testified that M.D. got in touch with him because Ms. Amaro needed to get "unsick," which meant that she needed heroin. Detective Harvey found instruments used to shoot heroin intravenously near Ms. Amaro's body, and the medical examiner found a fresh puncture mark on the inside of Ms. Amaro's left elbow. Ms. D.'s son testified that Ms. Amaro went straight up to her room after returning home from her outing with M.D., which is where Ms. D. found her body several hours later. Viewing the evidence in the light most favorable to the State, we conclude that there was sufficient circumstantial evidence to establish that it was the heroin Ms. Amaro purchased from Mr. Beaver's contact that caused her death. Accordingly, there was sufficient evidence in the record for the court to conclude that M.D. was delinquent of involuntary manslaughter. M.D.'s third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

> THE TRIAL COURT ERRED IN ADJUDICATING THE JUVENILE DELINQUENT OF CORRUPTING ANOTHER WITH DRUGS BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION BECAUSE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE JUVENILE FURNISHED HEROIN TO ANOTHER.

{¶16} M.D.'s final argument is that the trial court should not have found her delinquent of corrupting another with drugs because there was insufficient evidence to prove that she furnished Ms. Amaro with drugs. Section 2925.02(A)(3) provides that "[n]o person shall knowingly * * * furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person * * *." Although the term "furnish" is not defined by the statute, M.D. argues that it means "to supply, provide or equip" and that, at

least with respect to alcohol, it also means "to provide in any ways and includes giving as well as selling." The trial court, citing *State v. Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423, defined furnish as "provided, supplied, or gave access to." *Id*. at ¶ 86. It concluded that, because M.D. provided Ms. Amaro with the contacts she needed to obtain heroin, M.D. knew that it was heroin that Ms. Amaro sought, and Ms. Amaro suffered serious physical harm from using that heroin, M.D. was delinquent of corrupting another with drugs.

**{¶17}** Upon review of the record, we conclude that, viewing the evidence in a light most favorable to the prosecution, M.D.'s actions in providing Ms. Amaro with a source for heroin, her assistance in getting Ms. Amaro a ride to the location of the heroin transaction, and Ms. Amaro's subsequent death from that heroin is sufficient to support the trial court's conclusion that M.D. furnished drugs to Ms. Amaro. M.D.'s fourth assignment of error is overruled.

III.

**{¶18}** M.D.'s assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

MOORE, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

CEDRIC B. COLVIN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.