[Cite as *State v. Wisniewski*, 2019-Ohio-1875.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 29064 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARK WISNIEWSKI | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2017-09-3481-A |

DECISION AND JOURNAL ENTRY

Dated: May 15, 2019

SCHAFER, Judge.

{¶1} Defendant-Appellant, Mark A. Wisniewski, appeals from his conviction in the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

{¶2} On the evening of July 25, 2016, twenty-two year old J.G. contacted her acquaintance, Charles Elias, inquiring as to whether he could find her $350.00 worth of heroin. Elias confirmed that he would be able to find the heroin because his roommate, Wisniewski, was "using and distributing" heroin. Elias informed Wisniewski about J.G.'s inquiry, and Wisniewski made arrangements with J.G. regarding the heroin. Elias then contacted another individual, Joseph Mislosky, to arrange for a ride to retrieve J.G. from her home in Twinsburg and bring her to Wisniewski's house in Bedford.

{¶3} Around 8:00 or 9:00 p.m. Mislosky, with Elias and Wisniewski in his vehicle, picked up J.G. and drove the group to Wisniewski's house. Sometime shortly after their arrival

at Wisniewski's house, Wisniewski went outside to meet with another individual in order to obtain the drugs. Wisniewski then weighed, packaged the drugs in "folds" or "bindles" made from magazine paper, and distributed them to the others according to the amount each had purchased.

{¶4} Elias testified that he was occasionally in Wisniewski's bedroom that evening, along with Wisniewski, Mislosky, and J.G., but he spent the majority of the time in the living room. However, Elias testified that he did observe J.G. snorting a line of the heroin in Wisniewski's bedroom. He estimated that J.G. was in the bedroom with them for about one hour or more, but no longer than two hours. Elias observed J.G., Wisniewski, and Mislosky, when they left the basement to take J.G. home. He testified that the three of them were all "conscious, walking, [and] talking fine" at that time.

{¶5} Elias testified that he had done drugs with J.G. on prior occasions, and described J.G.'s demeanor after taking drugs as follows: "[s]he either got really mean or she would go to sleep very easily." Elias indicated that J.G.'s behavior after taking drugs "caused concern for everybody[,]" including Wisniewski, Mislosky, Elias himself, and Elias's then-girlfriend, Katie, who was also a friend of J.G. He indicated that they were all aware that J.G. had a very low tolerance for drugs and, because they did not want her to overdose, whenever J.G. would fall unconscious they would make sure that she was breathing.

{¶6} On July 27, 2016, J.G.'s father grew concerned because—although they lived in the same house—he had not seen or heard from J.G. This prompted him to unlock the door and enter J.G.'s bedroom. Inside the bedroom, her father discovered J.G. on her bed up "on all fours" and, after rolling her over, he realized something was wrong and proceeded to call 9-1-1. J.G.'s father attempted to revive her, but realized it was probably too late because her body was

"greenish-blue" in color and cold to the touch. Paramedics were unable to revive J.G. and it was later determined that J.G. had already been deceased for approximately a day when her father discovered her body.

{¶7} Paramedics and officers arrived at J.G.'s home in response to the call regarding an unresponsive female. Officer Terry L. Wain of the Twinsburg Police Department was among the first officers to arrive at the scene. After Officer Wain observed J.G. lying on the floor of her bedroom, he summoned Sergeant Mark Kreiger regarding a possible heroin overdose.

{¶8} Sergeant Kreiger processed the entire scene, including J.G.'s body and the evidence found at the scene. After his initial assessment, Sergeant Kreiger began looking for evidence as to the cause of J.G.'s overdose. He found a razor blade, a full bindle, an open and empty bindle, and a straw laying underneath a shirt. He also discovered J.G.'s cell phone, a gas station receipt, a pill bottle, a blue liquid, a tin can filled with hypodermic syringes, a wire for tying off one's arm, and various different types of paraphernalia. Sergeant Krieger observed that both the full bindle and the empty bindle appeared to be from the same advertisement from the same page or magazine. He testified that these were the typical folds or bindles used to distribute heroin, and confirmed that these were the only two bindles found in J.G.'s bedroom.

{¶9} Officers from the Twinsburg Police Department determined that the receipt found in J.G.'s bedroom came from a Speedway located approximately ten minutes from J.G.'s home and was dated July 26, 2016, at 1:20 a.m. Officers obtained surveillance video from the store and were able to confirm that J.G. was in the store with Mislosky at that time. A forensic computer scientist at the Ohio Bureau of Criminal Investigation ("BCI") analyzed J.G.'s cell phone and created a report that allowed investigators to put together a basic timeline from the evening of July 25 to the early morning of July 26, 2016. Based on this report, investigators

determined that J.G. had been communicating with Wisniewski, Mislosky, and Elias on July 25, 2016. They were also able to determine that J.G. arrived at home around 1:30 a.m. on July 26, 2016, and that her cellphone did not leave the home after that. The report lead investigators to conclude that J.G.'s death occurred sometime between her last internet search at 4:06 a.m. and her first unread text message at 4:36 a.m. on July 26, 2016.

{¶10} During their investigation, officers questioned Mislosky regarding the incident. Then, working along with the Bedford Police Department, the Twinsburg officers executed a search warrant at Wisniewski's house and took Wisniewski in for questioning. During the recorded interview with police, Wisniewski admitted to using heroin with J.G. on July 25, 2016, and further admitted that he also sold J.G. heroin. Wisniewski acknowledged that the bindles were made of paper from a painting magazine. He also admitted that, when he prepared the bindles for J.G., he cut the heroin he had just purchased from his supplier with Seroquel and antihistamine to make the bindles seem as though they contained the agreed upon amount of heroin, while retaining a portion of the heroin for himself.

{¶11} Both of the bindles found near J.G.'s body were tested by BCI and both were confirmed to contain a powder substance identified as heroin and fentanyl. Following the initial testing, investigators requested a subsequent analysis to test for noncontrolled substances. The retesting of the powder substance in the full bindle revealed the presence of Seroquel, furanyl fentanyl, and carfentanil, in addition to the heroin and fentanyl identified in the original analysis. The empty bindle, however, contained only trace amounts of the powder and there was not a sufficient amount of residue to permit retesting. BCI also tested both bindles for DNA. While the presence of DNA profiles consistent with both J.G. and Wisniewski were detected on the paper from the full bindle, only J.G.'s DNA was detected on the paper from the empty bindle.

{¶12} The medical examiner who conducted the autopsy testified that J.G's death was the result of acute intoxication of the drugs fentanyl and heroin. Based on the results of blood and urine drug screens, the medical examiner confirmed the presence of lethal amounts of both heroin and fentanyl in her body. He also testified as to evidence of recent intravenous drug abuse evinced by the needle punctures on her arms which occurred within a range of a few minutes to a couple of hours prior to J.G.'s death.

{¶13} On October 6, 2017, the Summit Count Grand Jury indicted Wisniewski on the following charges: involuntary manslaughter in violation of R.C. 2903.04(A), a felony of the fourth degree; corrupting another with drugs in violation of R.C. 2925.02(A)(3), a felony of the second degree; trafficking in heroin in violation of R.C. 2925.03(A)(1)(C)(6), a felony of the fifth degree; and aggravated trafficking in drugs (fentanyl) in violation of R.C. 2925.03(A)(1)(C)(1), a felony of the fifth degree. Wisniewski entered a plea of not guilty to the charges, and the matter proceeded to trial. Following deliberations, the jury returned a verdict of guilty as to involuntary manslaughter, corrupting another with drugs, and trafficking in heroin. The jury returned a verdict of not guilty as to aggravated trafficking in drugs. After merging the corrupting another with drugs conviction and the involuntary manslaughter conviction, the trial court sentenced Wisniewski on the convictions for involuntary manslaughter and trafficking in heroin. Wisniewski appeals his conviction, raising two assignments of error for our review.

II.

## Assignment of Error I

**The evidence in this case was insufficient as a matter of law to support the convictions.**

{¶14} Within his first assignment of error, Mr. Wisniewski contends that his convictions for involuntary manslaughter, corrupting another with drugs, and trafficking in heroin were not

supported by sufficient evidence. A challenge to the sufficiency of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**Involuntary Manslaughter**

{¶15} The involuntary manslaughter statute provides that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A). A death is the proximate result of an offender's conduct in committing the underlying felony offense if the death is "'a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience.'" *In re M.D.*, 9th Dist. Summit No. 28087, 2016-Ohio-5393, ¶ 14, quoting *State v. Rodrigues*, 9th Dist. Lorain No. 11CA009971, 2012-Ohio-535, ¶ 10.

{¶16} In his brief, Mr. Wisniewski challenges his conviction for involuntary manslaughter, arguing that the State did not present sufficient evidence to "create a continuous chain of events" between J.G leaving Wisniewski's house and her death several hours later. Wisniewski also claims a lack of evidence to establish that Wisniewski distributed to J.G. both of the bindles—the full bindle and the empty bindle—that were found near J.G.'s body following her death, contending that it is unclear whether the heroin contained in each of the bindles came

from the same product. Additionally, he takes issue with the fact that his DNA was detected on the full bindle, but not detected on the empty bindle. Although Wisniewski does not specifically reference any predicate felony offense, his argument appears to challenge the causation element based on the sufficiency of evidence linking the heroin he distributed to J.G. as the cause of J.G.'s death.

{¶17} The evidence reflects that J.G. died of acute intoxication of the drugs fentanyl and heroin. Wisniewski admitted that he used heroin with J.G. the evening prior to her death, and that he was aware of her low tolerance for heroin. He also admitted that he supplied J.G. with heroin packaged in bindles made of paper from a painting magazine. Although J.G. was in her home, and presumably not in the presence of Wisniewski when she took the fatal dose, both bindles were found near J.G.'s body after her death. Both the full bindle and the empty bindle appeared to be from an advertisement taken from the painting magazine. BCI confirmed that both bindles contained heroin and fentanyl. Further, Wisniewski's DNA was found on the full bindle, and BCI was able to confirm upon retesting that the full bindle contained the Seroquel that Wisniewski admittedly cut the heroin with prior to distributing it to J.G.

{¶18} Although the presence of Wisniewski's DNA on the full bindle may evidence that he handled that particular bindle, the converse is not necessarily true. The fact that Wisniewski's DNA was not detected on one of these two bindles does not exclude him as the individual who distributed that bindle to J.G. Likewise, any absence of evidence confirming that the empty bindle contained heroin from the same source or batch as the heroin in the full bindle is inconsequential. "Circumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks*, 61 Ohio St.3d 259 at paragraph one of the syllabus. Viewing the evidence in the light most favorable to the prosecution, we conclude there was sufficient

circumstantial evidence to establish that J.G.'s death was a foreseeable consequence of Wisniewski' actions in selling or distributing to J.G. the heroin that caused her death. Accordingly, the evidence was sufficient to allow the jury to find Wisniewski guilty of involuntary manslaughter.

**Corrupting Another With Drugs**

**{¶19}** Wisniewski was convicted of corrupting another with drugs under R.C. 2925.02(A)(3). That statute provides that "[n]o person shall knowingly[,] * * * [b]y any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent." R.C. 2925.02(A)(3). In his brief, Wisniewski asserts that there is no evidence of record to show that "Wisniewski directly administered the drugs to [J.G.] or coerced her to use the drugs." Irrespective of the veracity of his contention, Wisniewski has not challenged the sufficiency of evidence as to any element of R.C. 2925.02(A)(3). The State was not required to prove that Wisniewski "directly administered" or "coerced" J.G. to use drugs. To sustain a conviction for corrupting another with drugs, it was sufficient for the State to present evidence, as it did here, that Wisniewski "furnish[ed]" to J.G. a controlled substance and, thereby, caused J.G. serious physical harm. *See* R.C. 2925.02(A)(3). Therefore, we conclude that Wisniewski's argument lacks merit.

**Trafficking In Heroin**

**{¶20}** Wisniewski also challenges his conviction for trafficking in heroin. R.C. 2525.03(A)(1)(C)(6) provides that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance or a controlled substance analog[,]" and provides that "[i]f the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing

heroin, whoever violates division (A) of this section is guilty of trafficking in heroin." Despite Wisniewski's claim to the contrary, we conclude that there is ample evidence in the record, including Wisniewski's own admission, to establish that Wisniewski obtained heroin from his supplier which he then cut, packaged, and sold to J.G. Consequently, we find, viewing this evidence in a light most favorable to the prosecution, that there was sufficient evidence to allow the jury to find Wisniewski guilty of trafficking in heroin.

{¶21} Wisniewski's first assignment of error is overruled.

### Assignment of Error II

**The verdicts in this case were against the manifest weight of the evidence.**

{¶22} In his second assignment of error, Wisniewski asserts that the verdicts in this case were against the manifest weight of the evidence. When considering an argument that a criminal conviction is against the manifest weight standard, this Court is required to

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

{¶23} Although Wisniewski's merit brief does set forth the standard of review for a manifest weight challenge, he does not articulate a separate manifest weight argument. Instead, he suggests that this Court may consider the weight of the evidence while reviewing the arguments raised in his first assignment of error. In doing so, Wisniewski has failed to cite to

any authorities, statutes, or parts of the record, and has not presented an argument supporting his contentions with respect to this assignment of error as required by App.R. 16(A)(7). This court will not create or develop an argument on Wisniewski's behalf. *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 47, citing *State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32.

**{¶24}** Wisniewski's second assignment of error is overruled.

## III.

**{¶25}** Wisniewski's first and second assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DONALD R. HICKS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.